Judge Fischer is commenting on the fact that I haven't moved to the 21st century totally in this huge paper, so my wife told me I need to do that, and of course, I'm going to listen to both Judge Fischer and my wife. Well, welcome to one and all. We have some important cases today for the court's consideration, and we have a lot of counsel who are going to be speaking today. We welcome all of you, and I am not going to be keeping track of who's jumping up for two minutes or four minutes or whatever. She will, and we will be looking for the lights. I think on some of the shorter presentations, it might behoove you not to ask for rebuttal, because 30 seconds of rebuttal might not make sense, but I know you guys said you were going to decide on who's going to do rebuttal. What are you going to do, Mr. Goldberg? In our request, we asked the collective to rebut, and that the call time not be taken out of any of those separate requests. We set such three minutes of the total time. And have you decided who among counsel will do that, or is that to be... I'm not sure if you hear what Ms. Zeldner has to say. On that issue? No. Oh, you mean you'll wait to hear what I have to say. Well, he's going to be saying a lot. Ms. Zeldner never disappoints on that particular score. I mean that in a good way. All right. So, let's begin, then. Who shall be the first? And lest we begin without everyone being introduced, our wonderful colleague, Judge Nygaard, is on the phone. I believe you can see him. Yes, sir. Good morning, Judge Nygaard. Good morning. I'm going to be having my microphone on mute for most of the time because I understand there's an echo or feedback problem. But everything's fine here. I can see it. I can hear you. Actually, there's no problem. Whenever you want to chime in, please do. Wonderful to see you and hear from you. Thank you. All right. Counsel? Go ahead, sir. My name is Mark Cedrone. May it please the Court, I represent Appellant Alfano in these consolidated appeals, and I'm going to be addressing the facial efficacy of the mail fraud charges. As the Court knows, mail and wire fraud can, a scheme to, a scheme to deprive... Maybe you want to just put your... Oh, I'm sorry. I generally thought I spoke loud enough, but we'll let it go. Just one time, not so much. Speak loud enough that they hear you. I understand. And the narrow question for consideration here, sir, is whether the indictment sufficiently alleged a property interest that could be deprived as a result of the alleged scheme to defraud. And more narrowly, the issue could be whether the city and state had a property interest in fines and costs in unadjudicated traffic citations when it's clear from the pleading and from the governing law that the Pennsylvania system for traffic regulation is largely regulatory. The ticket holders are presumed not guilty throughout the entire process. Well, let me ask you a question about the property rights. At some point in the continuum, there is a property right? And your point is it's not until the point of adjudication, I presume. It could not be until at least the point of adjudication, at the earliest, yes, sir. So let me ask you this question. Assume this scenario. I want consideration. I go to my lawyer and say, I did it, whatever it is. I was feeding, I was whatever. But I can't have this on my record. I'm a public official or I'm a judge or whatever. Please take care of it. That lawyer calls a personal person, talks to a judge, needs consideration, whatever. Now, I know when I talk to my lawyer that I was guilty. Right? There's no doubt in my mind. I did it. But I'm asking for the system to work in my favor. Right? At least hypothetically, I want it to go down the chain and I want consideration so that it's taken care of. In that scenario, does the state or commonwealth have a property right to the defendant will come out? Your Honor, we're here today to look at the allegations alleged. One of the key problems in this case is that there is not a single allegation of in fact guilt. The hypothetical that Your Honor posits is really very simple. If such facts were included in the indictment, then there would be at least an allegation of in fact guilt. I'm not entirely certain, sir, that even under that scenario, until there's an adjudication, that there could be a vested property interest. And here is why. Even if you are, the defendant in this case, and you are in fact guilty, and you tell your lawyer you're in fact guilty, and you then ask that the process be manipulated because for whatever reason you wish to avoid the consequence. In this case, the government alleged the consequence is some future fine. You wish to avoid that consequence of being guilty. The statute provides the traffic court judges with discretion to make a decision any way they want. It doesn't have to be because of the consideration. They're not obliged for example to find somebody guilty just because the traffic ticket was issued guilty. They can nullify it. The scenario that I've given you, I would presume they would be obligated because I'm telling my person I did it. But there's still as a constitutional requirement that the government prove its case beyond a reasonable doubt. One of the things that may happen is the officer who gave the ticket doesn't show up for court. And they couldn't prove their case. That's right. That's exactly right. I'm sorry? Is that one of the ways in which a judge in traffic court would be able to hold his attorney as Judge Greenway said I really did it. I just don't want the points. Yes, sir. And until there's that guilty adjudication, the city and the state don't have any right of entitlement to the fines and costs. Let me ask you another question here. I have this. It's a property or money question. The money and property question is key to your argument. It seems to me when you look at both the Mammel and Morrow fraud statutes, notwithstanding McNally and the McNally decision, which you obviously have to follow, but there is some significance in this case, at least, to devising any scheme. Because this to me looks awfully close to at least a scheme. Would you acknowledge that, that there was a scheme that existed in traffic court? Yes, sir. I would acknowledge that at least as a matter of pleading, the but the operative question here is whether the scheme was to deprive property as property is defined under Cleveland and Pasquitino and McNally and so forth. Let me ask you about the traffic ticket. Yes, sir. And the traffic ticket, there was really a citation, I believe. Yes, sir. But is a traffic ticket slash citation a cause of action? I would imagine it is. Yes, sir. It is? I haven't really thought of it in that sense. It certainly is the commencement of a legal proceeding, so I feel as though I'm being baited, but that's fine. I'm happy to accept the bait. I'll say that I don't, that it is. I understand, sir. But there are some, there is some case law out there, particularly in the Peter and Sepulveda that refer to the species of property in those cases as a cause of action. Yes, sir, but in the way it is pled here, the government hasn't pled it as a cause of action. They have pled it as a financial dollar consequence. That is the grabberment. And again, sir, we can talk about all kinds of hypotheticals. This court, and as was the district court, is obliged to consider the sufficiency of the pleading here. I mean, I could go outside the record, as the government did in its brief in note 15, and talk about how there was an adjudication of not guilty for all of these charges, and so forth and so on, but that wouldn't be an appropriate consideration. The consideration here is whether the dollars, the city, the fines and costs that the government says are the financial consequence of the adjudication process is property. If you're circumventing the adjudicated process, why isn't that enough? Your Honor, Judge Nygaard has essentially addressed that very issue in the Henry case some time ago, where it was a circumvention of a bidding process. So, that's exactly what's happening here. There's an adjudicated process. However, the right to the property is not created until the end of the process. That is, at least in my humble view, readily apparent from the pleading. The government essentially acknowledges that in the way it pleads. It talks about a process. It talks about what happens when one is found guilty. How do you distinguish this case from the Mariani decision that was written in the district court by Judge Van Aschen? Well, I think it's, in many respects, similar to the Mariani case in that there, there was a process for assessment of the civil penalty. I mean, I was actually in the, I'm counsel of records in the Mariani case, so I know it a little bit better. There were two components to that case. There was a part that was clear as a bell, you know, the $100 per ton penalty. But then there was a discretionary assessment process. And that is sort of where we are. That... So you're saying that part of the Mariani case is consistent with what you're articulating. That's exactly what we argued. That was argued in the brief below and is argued here. Yes, sir. Judge Agard? I have no questions. All right. Thank you. May it please the Court. My name is Peter Goldberger. It's my privilege to represent Robert Mulgrew in this appeal. But I'm speaking now for five minutes on behalf of all the four appellants who stood trial. Mr. Cedrone was just speaking on behalf of all six of the appellants because all of them joined in that motion to dismiss. And the motion was denied on the same grounds for everyone. But then two reserved the issue on guilty plea and four went to trial. Times, Lowery, Singletary, and Mulgrew. And I want to address how and why those four defendants were prejudiced at trial by the failure to have dismissed the fraud counts. So we're on the premise that Mr. Cedrone that we all prevail on Mr. Cedrone's argument for the purposes of what I'm going to talk about now. Mr. Goldberger? Yes. The question I have is when the jury has gone through the process of sending out various counts, some of which the defendants were found guilty of, some of which were not, doesn't that undermine the prejudicial spillover argument? That's exactly our starting point. I would pose the question just the way Your Honor did. How can they be prejudiced if they were acquitted of those very charges? So what happened at trial is everybody is acquitted of all the conspiracy and fraud counts and convicted of false statements and perjury counts. And this court has a four-part test for determining whether there's prejudicial spillover with respect to counts that should have been dismissed. And that's very much the posture of the case in U.S. v. Wright. I don't think there's any case that's exactly on this posture where the case went to trial and then there were acquittals. So it's counterintuitive as a starting point. I agree with you. But when you analyze it, it really comes out the same. And that is the four-point test devised in Palullo, applied by this court in Cross and more recently in Wright. Exactly the premise that I'm working on. Well, certainly not all of them. And I think it's fair to say no. Now we're getting somewhere in the territory. There's somewhere in the territory. I will say there is not a federal district judge alive, and not Judge Stengel  tolerated a 25 or 28-day trial in which the judge would have said, well, with many trials of particular traffic tickets, with the case agent testifying over and over again as a summary witness because the case was so complex and multilayered, with dozens and dozens of witnesses, with hundreds and hundreds of exhibits to prove whether four defendants on one, two, or a half-dozen occasions, depending on which one you're talking about, made either false declarations before the grand jury or a false statement to an FBI agent on particular questions that arise out of the general circumstances which were the scheme, as Your Honors pointed out before. It would not have been necessary and would not have been tolerated to present a trial similar to this one. And that's at least three of the four points of the case. So the first question is whether the charges are intertwined. Well, in a way, the charges are intertwined, but when you look at the specifics of what it takes to prove perjury or false statement, and Ms. Mathieson will be addressing that in detail in a moment, you can see that they are only slightly intertwined, not intertwined at the level of elements. Second, and more important, was the evidence separate or the same, the evidence needed to prove perjury, to prove the particular false statements, was this question, was this answer to that question false beyond a reasonable doubt, would not have taken the whole proof of the scheme that the government put on for more than a month. So your argument is that if you take the entire quantum of what the government put on, your argument is that you should take it all away at least 75% would be gone. Yes. Is that part of the rule you want us to come up with, the 75% rule? No, there's no 75% rule. It's common sense. Rule 403, because it's any substantial, the precedent is any substantial evidence in combination with the other factors. We are getting that echo. By the way, I think he has. I can't hear you. No, my mic is not working. My fault. So what we allege, what we argue is that under rule 403, cumulative evidence, waste of time, confusion of the issues, an overwhelming amount of the evidence, a very significant body of evidence, but there is no mathematical test, would never have been admitted at a hypothetical separate perjury trial. And if I may, there's one other point, and then I'll sit down, which is... No, before you get to that. I'm really intrigued by this point, because I really don't understand it. You're saying that we should send it back and the district court should go through some process, sort of undefined, so that the quantum of evidence would be less. We're not sure exactly how much less, but it should be less. Now the process is a new trial. These four defendants are entitled to a new trial on the perjury counts, and they are entitled each to a separate trial, because in the perjury only case, there would be no glue under rule 8B to permit joinder of defendants. So their trials would be entirely different. Each would be on three false statements, and it would be a new trial at which the judge would exercise discretion under rule 403 to exclude waste of time, cumulative, and confusing evidence of a larger scheme, which was not necessary to prove the particular false statements or false declarations charged against any of them. So in each of those separate trials, there would have to be an individual decision by the court contextualizing the conspiracy evidence the government was going to put forth and then excising what it thought would be overage or supportable. There is no perjury charge at any of these hypothetical separate trials. There is no conspiracy charge. There is no conspiracy to perpetrate false declarations at the grand jury. There is no allegation. The government would have to show that each particular statement alleged in each particular account was false, and the judge would have discretion about how much context under rule 403 to allow to show that, and it is inconceivable that it would be in any way similar to the trial that was held. Thank you. Thank you, Your Honors. I'm Lisa Mathewson. I represent Thomasine Times. I'm speaking now for these six minutes on behalf of the three appellants who were convicted of false declarations charges, Ms. Times, Mr. Mulgrew, and Mr. Lowry. For brevity, I will refer to these as perjury, although they were technically charges under 1623, false declarations before the grand jury. Your Honors, a perjury conviction failed unless there's proof beyond a reasonable doubt that both the witness understood the question in a way that made his answer both objectively knowingly false and objectively false. The premise of the government's position on both spillover and with respect to perjury is that each of these questions asked the witness essentially, did you engage in ticket-fixing? And, in the government's view, because they did engage in ticket-fixing, each of the questions was answered falsely. But that conglomeration of a theory is entirely impermissible in the perjury context. The principles of the Braunston case and this Court's own precedent, both applying Braunston and separately from it, agree that precise questioning is an imperative for perjury and the burden on the questioner to pin the witness down to the specific object of the inquiry. That has two consequences. In this context, what would be a properly posed precise question? Your Honor, for example, there were instances where let's look at the indictment, because that actually gives a great example. The indictment, if Your Honor is looking at appendix pages 195 and 96, paragraphs 30 and 32, attempts to define ticket-fixing. That definition is noteworthy for a number of reasons. It starts with the term preferential treatment, which it then defines with reference to another term consideration, which it then defines with reference to the term ticket-fixing, and then provides four defined actions, which it then circles back to connect to preferential treatment for and this is a quote, well-connected individuals that was not available to the rest of the citizenry. As Your Honor see in the indictment, it was entirely possible for the prosecutors to formulate a specific question about particular actions. For example, find someone not guilty when they were guilty because you received a request on an index card, as the record shows, that's how these requests were transmitted. The prosecutors, understandably, Your Honor, bear in mind please that the grand jury testimony at issue took place only weeks after the initial search. One of the prosecutors testified at trial, or didn't testify, but mentioned at trial that the government had not even known the word consideration, for example, at the time that it questioned my client, Ms. Hines, in the grand jury. The prosecutors were exploring a theory of mail fraud that is novel. We say it's invalid, they say it's valid. Whether it's valid or invalid, it was a novel theory. Can I ask a quick question on this? And so in question, in response, part of your theory is that there are certain terms of what essentially became terms of art that might not have been well understood. Any of the Now you're representing three clients at once. Any of them say, I'm sorry, I don't understand. They did not, Your Honor, but that's a very important point. There are cases in this Court's jurisprudence that refer to the failure to ask for  It's up to the Court to examine those. That statement occurs only in cases, the U.S. v. Long case, for example, in which the term is subject to differing interpretations but not what this Court calls fundamentally ambiguous. When the question is fundamentally ambiguous, the failure to ask for clarification has no bearing under this Court's jurisprudence to hold otherwise would flip the burden to the defendant to clarify the prosecutor's questions. The prosecutor is the one that has the burden to clarify these questions. It's important to bear in mind here precisely what we claim were the fundamentally ambiguous questions. There was a reference to favorable treatment with respect to Ms. Hines. Did anyone ask you for favorable treatment? That term doesn't even suggest preferencing one group of litigants over another but simply treating somebody favorably in court, which is, of course, what judges are asked to do all the time. Mr. Lowry was asked, do you give special favors? Notably, Your Honors, it is highly significant that neither of those terms made their way into the indictment. And they didn't make their way into the indictment because they are meaningless. There is no way Ms. Hines and Mr. Lowry are both high school graduates. Don't be misled, Your Honors, by the title of judge. They're both high school graduates. In the very earliest stages of a confidential, secret grand jury investigation, there is no way that Ms. Hines could have had any idea what the government was getting at when they said, has anyone asked you for favorable treatment? Likewise, Mr. Lowry, when asked, do you do special favors? Moreover, not only were those... ... ... ... ... ... ... ... ... ... ... It is not that you can draw an inference either way, Your Honor. It's that it gives no information about what... what action, really, the government is asking about. And the reason for that, Your Honor, is, and remember the standard from Ryan is, could this word be used absent... could this word be used with mutual understanding by questioner and witness absent a definition or absent context? Now, here, the government goes immediately to context. They concede that they never defined the term favorable treatment. When Your Honors look at the record, Your Honor, there is no definition before the grand jury. And likewise, they go directly to context for Mr. Lowry. They concede that they never defined the term special favors. These witnesses had no notice sitting in that grand jury weeks after the initial search what this novel theory of mail fraud... ...